UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES OF AMERICA

      - against –

SEAN NOVIS,

             Defendant

------------------------------------x

Docket No. 20-CR-335 (JMA)

**MOTION PURSUANT TO
RULE 29(C)**

TO: **THE CLERK OF THE COURT**

    **SEAN NOVIS** moves this Court pursuant to Rule 29(c) to set aside the guilty verdicts rendered by the jury and to grant a Judgment of Acquittal on all counts in the above-captioned indictment. Simply stated, the evidence was insufficient to support Mr. Novis' convictions on any of the nineteen counts in the indictment.

    I.    **STANDARD FOR REVIEW**

    The standard for evaluating a Rule 29 Motion, as the Court well knows, is the same as the due process standard used in evaluating whether the evidence is sufficient to sustain the verdict. The issue is whether, when viewing all the evidence in the light most favorable to the Government, any rational jury could find the defendant guilty beyond a reasonable doubt. *United States v. Aiyer,* 470 F.Supp.3d 383 (S.D.N.Y 2020). A verdict should be set aside if the evidence gives "equal or nearly equal" support to a theory of guilt and a theory of innocence because in that event, a reasonable trier of fact "must necessarily" entertain reasonable doubt, *United States v. Santillana,*

604 F.3d 192, 195 (5th Cir. 2010). See also *United States v. Glenn*,

312 F. 3d 58, 70 (2nd Cir. 2002).


II.   **BACKGROUND**

Recent studies have shown that between 2% and 14% of convicted

persons in U.S. prisons are factually innocent. (Chicago Tribune

3/14/2018; National registry of Exonerations 2019 Annual Report; U.S.

of Justice, Office of Justice Programs, 9/2017 Report). This means

that between 46,000 and 230,000 innocent persons are languishing in

prison every day. It is likely that in most, if not all, of these

cases, the there was a lack of evidence, false evidence and/or

favorable evidence was suppressed. In Mr. Novis's case, the

prosecution lacked incriminating evidence, and relied, instead, upon

irrelevant and prejudicial evidence to induce a jury to convict

defendants who were factually and legally innocent. Measured against

the Rule 29 standard of what a "rational trier of fact" would find,

the proof of guilt here is sorely wanting. Our awareness that this

case would be unattractive to jurors who were subject to annoying

solicitations by mail and telephone prompted two defense requests for

a bench trial before Your Honor. For obvious reasons, the prosecutors

insisted on having the case tried before a jury.

The prosecutors adduced much evidence at the trial, but most of

it was irrelevant. They produced testimony, documents and pie charts

to show the revenues derived by the Defendants from the sale of their

Sweepstakes reports. Their own case agent, however agreed that this

was irrelevant (Inspector Rodriguez CX (TR. 1302).

The prosecutors elicited testimony from each alleged "victim" or their kin, as to the ages of the "victims," ranging from 80-99 years old. This, too, was irrelevant, as Inspector Rodriguez also admitted (TR. 1301-1302). Similarly, they elicited testimony as to the lack of wealth and the poor health of the "victims," which, again according to Inspector Rodriguez, was also irrelevant (Tr. 1302). The government's own witnesses conceded that, when purchasing the mailing lists for the promotions, defendants had no way of knowing the ages of the recipients (Tr. 697). Thus, the purported victims were not persons of ordinary prudence, and the fact that they misunderstood the clearly worded promotions was not sufficient to prove that Mr. Novis intended to defraud consumers of ordinary prudence. *United States v. Thomas,* 377 F.3d 232 (2d Cir. 2004); *United States v. Bank of New York Mellon,* 941 F.Supp.2d 438 (S.D.N.Y. 2013).

Other highly prejudicial but irrelevant hearsay testimony was admitted under the guise of showing that the Defendants were "on Notice" that their promotions might be violative of the law. This included correspondence from law enforcement officials in other States that summarized complaints from recipients of allegedly fraudulent promotions. These "hearsay upon hearsay" documents, of course, precluded any cross-examination by Mr. Novis. Moreover, a number of these complaints involved promotions that clearly did not emanate from either Mr. Novis or his co-Defendant Gary Denkberg.

Also admitted over defense objections were: a newspaper article from Vancouver, Canada, detailing a raid on a "massive lottery operation" in that City (GX 23), and an FTC <u>civil</u> complaint stemming

from a Miami, Florida sweepstakes reporting case (GX 343). The
subjects of the Vancouver raid had no relationship to Messrs. Novis
and Denkberg; nor was the crime that was being investigated related in
any way to the crimes with which Novis and Denkberg were charged.
Similarly, the defendants in the Miami FTC case had no connection
whatsoever to Novis or Denkberg. Nonetheless, this evidence, along
with all of the other irrelevant, hearsay evidence, served to unfairly
inflame the emotions of the jury, which was clearly the only purpose
for its presentation.

The strangest facet of this case is that Mr. Novis conceded that
ALL of the prosecution's witnesses, with the exception of Alan
Solomon, told the truth on both direct and cross examination, and
still there was insufficient evidence to convict him of any crime. In
doing so, each witness (including Mr. Solomon on cross-examination)
buttressed the defense case, in particular the reliance on advice of
counsel defense.

In short, this case should have resulted in an acquittal.
Undoubtedly, the prosecution and defense witnesses ALL established
that the Defendants reasonably relied on the advice of their attorneys
who reviewed, edited, and approved of ALL of the mailings at issue.
This conclusively negates the element of intent.

In this regard, at TR, 283-284, prosecution witness Cheryl
Jacquard testified that, as Mr. Novis's former production manager, she
was aware that all of Mr. Novis's promotions were reviewed multiple
times prior to being mailed.

Ellen McDevitt, Mr. Novis's office manager, testified (TR. 609, 615, 623-626) that all promotions were reviewed multiple times by attorneys prior to being mailed out. Moreover, Mr. Novis always implemented the changes that the attorneys recommended, which he reasonably understood would make his solicitation compliant with the law, and not fraudulent. (TR. 615).

Thomas Ressler, the copywriter who created some of Mr. Novis's promotions, testified that his creations were reviewed by Novis's attorneys, one of whom was brought to his home in Montana by Novis, for the purpose of editing promotions. Further, he testified, the promotions were changed to conform with the advice of counsel.

Adam Solomon was the witness whom the prosecution promised the jury, would undermine the defense of "reliance on advice of counsel." To the contrary, Solomon ended up testifying that he rendered his advice to the best of his ability to prevent Novis from committing fraud (TR. 1087). Moreover, to the best of his knowledge, Novis and Denkberg were seeking proper legal advice on which they could rely (TR.887,911). This testimony was corroborated by Attorney Lustigman, who testified that both Defendants were adamant that they "want[ed] to be in compliance with the 2012 Postal Agreement" (Tr. 1523).

All of the testimony from these four prosecution witnesses regarding the issue of reliance on counsel was uncontroverted by any testimony or document. This, taken in conjunction with the testimony of Attorney Andrew Lustigman, the sole witness for the defense, leads to the inescapable conclusion that Mr. Novis relied upon and followed the advice of multiple attorneys retained by him for the sole purpose

of ensuring that his promotions were not violative of the law. Mr. Lustigman testified that at the time that he rendered the advice to the Defendants, he believed that their promotions were compliant with the law. He further stated that this continues to be his belief (TR. 1528).

Even beyond this dispositive defense, the evidence in the case was insufficient to prove any of the charges in the indictment, as demonstrated by an analysis of the entire indictment:

### III. <u>ANALYSIS OF THE COUNTS OF THE INDICTMENT</u>

### A.   <u>Count 1 (Conspiracy)</u>

As with the substantive mail fraud counts, the conspiracy count is defeated by the reliance on the advice of counsel defense. Simply stated, although the Government showed a loose partnership between Defendants Novis and Denkberg, they failed to show either through direct or circumstantial evidence that a conspiracy with an illegal objective ever existed. Not only did Novis and Denkberg rely on advice of counsel, but by the time their promotions were mailed, any questionable content had been removed. Recipients of the promotions were told repeatedly they had not won anything and that they only had an "opportunity" to win. The essence of the case was contained in the first paragraph of the introduction to the Supersede Indictment that reads in pertinent part "the prize notices falsely and fraudulently induced recipients to pay fees as a purported condition of receiving <u>promised cash prizes</u>. Despite payment of such fees by many victims, the <u>promised cash prizes</u> were not given." The promotions themselves

belied the allegation that recipients were promised that they would
receive cash prizes. To the contrary, the promotions clearly and
repeatedly stated that the recipients were offered the OPPORTUNITY to
enter sweepstakes in which they might win prizes. Those who responded
to the sweepstakes received a book of actual, legitimate sweepstakes,
as promised. Repeat customers also again received books, the vast
majority of them without complaining, demonstrating that consumers of
ordinary prudence were not defrauded by the mailings.  Moreover, as
Agent Rodriguez admitted, there is no way of knowing whether any of
the recipients of the booklets did, in fact, win prizes in the
sweepstakes included within the booklets they received.  There was no
question but that the sweepstakes contained in the booklets were
legitimate sweepstakes which sent prizes to the winners.

**B.    Counts 2-11 (Mail Fraud)**

As with the conspiracy, both the defense of reasonable reliance
on the advice of counsel as well as the fact that the promotions
themselves were not fraudulent defeats these counts. As shown above,
the alleged victims were conspicuously informed, and understood, that
they had not won anything and that they were merely "buying an
opportunity" to win money. Paul Murrell testified that he sent his
checks in "hopes of winning money" (TR. 86). Sharon Soltis testified
that her father told her one time that he thought that he was winner.
That was the occasion when someone sent him a $10,000 bogus check that
the bank refused to honor. Even the prosecutors agreed that neither
that check nor the promotion associated with it emanated from Sean
Novis or Gary Denkberg (see TR. 341). Soltis read the documents and

clearly understood that her father had not won anything, which she conveyed to him (TR. 347). The notices simply stated that he had "an opportunity or a chance to win one million dollars" (TR. 347-348).

Ashley Seip testified that by reading the promotion "it led me to believe that he (her father) would be winning or could be winning money...."Yeah, that's an opportunity to get the - receive the money" (TR. 471).

Marlene Montilla testified that her 84 year old husband was suffering from cognitive loss. Nonetheless, on seven or eight of the checks issued by him that were introduced into evidence he wrote "report" or "report fee" in the memo portion of the checks, indicating that he understood that he was purchasing a sweepstakes report - not that he had won a million dollars.

Anne Rivenburg testified that although her father (foolishly) believed that he had won money she read the materials and understood that he had not won anything, telling her father "that's not how it works" (TR. 323). Their pastor told him that he had not won anything, their doctor told him that he had not won anything. All of the reasonable persons understood this. On cross-examination, she conceded that she had never even seen any of the notices that her father claimed had awarded him sweepstakes winnings. She relied solely on "what he told me" (TR. 331).

Equally telling was an apology letter written to the Defendants by a complainant, Elizabeth Wilder. In this document, introduced as Government's exhibit 312 and Defense exhibit V-N, Ms. Wilder explained that prior to reading the promotional material, she and her husband

both thought that she had won $1.9 million. Upon reading the
materials, she realized this was not case and that she was
"disappointed when I realized that I had made such a dumb mistake."
Yet, this "dumb mistake" is what the prosecution relied on in
utilizing the relatives of <u>unreasonable</u> elderly persons in their
effort to establish that the promotions were fraudulent. Again, the
evidence showed that Mr. Novis did not have the intent to defraud a
person of ordinary prudence, as is required for a conviction of mail
fraud.

### C.    <u>Counts 8-11 (Wire Fraud)</u>

The facts and the law applicable to the mail fraud counts also
serve to defeat the wire fraud counts. There is simply no evidence on
which to support the convictions on these counts.

### D.    <u>Counts 12-15 (Fictitious Names)</u>

The evidence also conclusively demonstrated that the use of
"fictitious names" on the promotions was insufficient to sustain a
conviction. The prosecution was required to show that the use of
"fictitious names" in the promotions was material. *See, e.g., United
States v. Johnson,* 945 F.3d 606, 613 (2d Cir. 2019); *United States v.
Shellef,* 732 F.Supp.2d 42, 64 (E.D.N.Y. 2010). In this respect, the
defense put into evidence IRS regulations permitting IRS employees to
use fictitious names to protect their privacy and their safety. The
prosecution in the case elicited testimony from former employees that
Messrs. Novis and Denkberg received feces, used condoms and used
toilet paper in their mail. There is no telling what might have
happened to them had they used their real names in their promotions.

In any event, no one can fairly say that the name of the sender of the promotions was material to a recipient's determination of whether to respond to the sweepstakes promotion. It was for good reason that the prosecution did not ask a single witness if he or she had placed any reliance on the fictitious names when making a decision to purchase the promotions.

On the other hand, prosecution witness Marlene Montilla conceded (at TR. 559) that it did not matter to her husband whether the name on the promotion was that of Andrew McNair, Sean Novis or James Druker. Both prosecution witness Adam Solomon and defense witness Andrew Lustigman testified that the use of fictitious names was of no importance to them (TR. 888, 889, 953). Indeed, Mr. Lustigman testified that the Federal Trade Commission ("FTC") permits the use of pseudonyms in telemarketing (TR. 1536). There was, in fact, no evidence upon which a rational trier of fact could conclude that the element of fictitious names was material, and the evidence on each of Counts 12-15 was insufficient to support a conviction.

### E.   Counts 16-19 (Aiding and Abetting)

There was absolutely no proof to support convictions on the Aiding and Abetting counts. Mr. Novis's former employees called by the prosecution all testified that they performed ministerial tasks for Messrs. Jeffrey Novis, Philip Priolo, and Shawn Phillips. Neither they nor Mr. Novis proofread the third-party materials. They did not look at the content, they did not edit the content and none testified that he or she had any reason to believe that the content was fraudulent.

Moreover, each testified that to the best of his or her knowledge,
Sean Novis had no knowledge of the content of those mailings. Sheer
speculation cannot support the convictions of these counts.

One final point - All of the evidence in this case pointed to the
existence of two distinct marketing programs by the Defendants, to
wit: pre- 2012 Postal Agreement, and post- 2012 Postal Agreement, as
was argued by the Defense in both openings and summations. _If_ a
conspiracy existed in 2003 through March 2012, it was concluded with
the signing of the Postal Agreement and the Cease and Desist Order.
Following that, in light of the testimony of the Government witnesses
and Andrew Lustigman, there could not conceivably have been a
conspiracy, because the conduct of the Defendants did not have an
illegal object and was not undertaken by illegal means. Any doubt
regarding this was removed by the introduction of GX 396, an email
that the prosecutors assiduously tried to avoid. A copy of that
significant Exhibit that shows an utter lack of criminal intent is
attached hereto.

**F.    Conclusion**

While the Defendants' promotions may have been annoying to many
people and were likely considered "sleazy" by many people, those
factors alone do not render them fraudulent. The promotions contained
lawful disclaimers and had all potentially unlawful language removed
by the attorneys who were paid to review and edit them and keep the
defendants in compliance with the laws and the postal regulations. No

rational trier of fact could conceivably find guilt beyond a
reasonable doubt, due to the lack of evidence in this case.


                              Respectfully submitted,




                              JAMES O. DRUKER
                              Attorney for Sean Novis


                              /S/ *Scott M. Druker*
                              ────────────────────────────
                              SCOTT M. DRUKER
                              Attorney for Sean Novis


                              KASE & DRUKER
                              Attorneys for Defendants
                              1325 Franklin Avenue Suite 225
                              Garden City, New York  11530
                              E-mail:  jim@kaseanddrukerlaw.com
                                       sdruker@kaseanddrukerlaw.com
                              Telephone  (516) 746-4300